UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| TODD ALAN FEEMSTER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 6:17-CV-39 |
| | § | |
| P. CHAPA, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS, TO RETAIN CASE, AND
TO  DENY MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Todd Alan Feemster is a Texas inmate appearing *pro se* and *in forma pauperis*.  He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983, asserting claims under the Eighth Amendment, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, Plaintiff has stated: (1) deliberate indifference claims to his health and safety against: (a) **Warden R. Beard, Jr., Program Supervisor V. Maciel, Correctional Officer T. Salles, and Correctional Officer V. Tijerina** in their individual capacities; and (b) **Warden R. Beard, Jr. and Program Supervisor V. Maciel** in their official capacities for injunctive relief; (2) a deliberate indifference claim to his serious medical needs against **Medical Officer C. Tupa;** and (3) an ADA/RA

claim against the **Texas Department of Criminal Justice (TDCJ)**. The undersigned will order service on these defendants.

The undersigned further recommends that: (1) Plaintiff's claims for money damages against all Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) Plaintiff's claims against the remaining defendants be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1); and (3) Plaintiff's Motion for Preliminary Injunction (D.E. 7) be **DENIED**.

## I.     JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently residing at the Stevenson Unit in Cuero, Texas. Plaintiff is currently serving: (1) a ten (10) year sentence and a twenty (20) year sentence for two indecency-with-a-child convictions; and (2) two thirty-five (35) year sentences for two sexual assault convictions. Plaintiff was convicted of these crimes in Denton County, Texas and sentenced on March 20, 2008.

The facts giving rise to Plaintiff's claims in this lawsuit occurred during Plaintiff's assignment to the Stevenson Unit. On June 26, 2017, Plaintiff filed his original complaint, naming the following individuals as defendants in their individual and official

capacities: (1) P. Chapa, Region IV Assistant Director; (2) Warden R. Beard, Jr., Warden; (3) F. Merida, Assistant Warden; (4) E. Ruiz, Major; (5) P. Baros, Investigator; (6) V. Maciel, Unit Classification Committee (UCC) Program Supervisor; (7) T. Salles, Correctional Officer; (8) V. Tijerina, Correctional Officer; (9) D. Gloor, Senior Practice Manager; and (10) C. Tupa, Medical Officer. (D.E. 1, pp. 3-7). Plaintiff claims that Defendants: (1) acted with deliberate indifference to his health, safety, and serious medical needs in violation of the Eighth Amendment; and (2) refused to accommodate his disabilities in violation of the ADA and the RA. (D.E. 1, pp. 4-6).

On July 17, 2017, Plaintiff filed his amended complaint in which he expanded upon his allegations and claims in this case. (D.E. 5). As part of his amended complaint, Plaintiff added an eleventh defendant in his or her individual and official capacity: John/Jane Doe, the reviewing officer of one of Plaintiff's Step 2 grievances. (D.E. 5, pp. 9-10). Plaintiff seeks declaratory, injunctive, and monetary relief. (D.E. 1, pp. 4, 7; D.E. 5, p. 10).

A *Spears*[1] hearing was conducted on November 9, 2017. The following representations were made either at the *Spears* hearing or in Plaintiff's original and amended complaints (D.E. 1, 5):

Plaintiff is a fifty-four year old male. Before his incarceration, Plaintiff was a United States Marine for fifteen years and received an honorable discharge in 1995. Plaintiff subsequently worked as a network engineer for a company in Houston, Texas.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

He held that job until sometime after the tragic events of September 11, 2001. From that time until his conviction in 2008, Plaintiff worked occasionally on a contract basis as a roofer but was unemployed for most of this time period.

Plaintiff has been housed at the Stevenson Unit since November 15, 2010. Plaintiff has a variety of health issues. Plaintiff testified at the *Spears* hearing that he has not received any kind of disability payments for any of his health issues. In 2013, Plaintiff experienced dental problems in the form of an abscess in two molars. Plaintiff's dental issues led to nerve damage as well as difficulties in speaking. Plaintiff's nerve damage remains to this day.

Plaintiff also suffers from numbness to both of his hands, elbows, and shoulders when performing repetitive tasks. Plaintiff's issues with numbness developed after Plaintiff was incarcerated. Plaintiff received a diagnosis from the medical department of repetitive trauma. Plaintiff further describes health issues with his feet, such as ingrown toenails, which resulted from wearing steel toe boots. Plaintiff's issues with his feet also have developed since his incarceration. Lastly, Plaintiff suffers from severe abdominal problems, in which he has pain, difficulty in crouching, and difficulty in using the bathroom. According to Plaintiff, he has been diagnosed by the medical department as suffering from two types of hernias. The prison medical unit will send Plaintiff to the hospital sometime in December to confirm whether he has a hernia and to evaluate whether he has cancer.

From 2010 through October of 2012, Plaintiff was assigned to work in the Stevenson Unit's Field (Hoe) Squad. Sometime in 2012, Plaintiff received a medical

diagnosis that led to the following restrictions in his TDCJ Health Summary for Classification (HSM-18): no work requiring repetitive use of hands and no work requiring steel toe or safety boots. These job restrictions led to his reassignment on October 3, 2012 to the Garden/Medical Squad. As a member of the Garden/Medical Squad, Plaintiff was charged with watering the crops in both the field and the decorative plants around the unit.

On May 16, 2016, Warden Beard directed UCC Program Supervisor Maciel to change Plaintiff's job assignment from Garden/Medical Squad to kitchen detail. Warden Beard made this change to Plaintiff's job assignment "with the informed advice, support, endorsement, and actual knowledge of" Assistant Warden Merida, Major Ruiz and Medical Officer Tupa. (D.E. 5, p. 3).

No explanation was provided to Plaintiff as to why his job assignment was changed. Plaintiff states that this job reassignment was medically inappropriate in that it required the highly repetitive use of his hands. On May 22, 2016, Plaintiff made an I-60 request for a job change back to Garden/Medical Squad. Major Ruiz denied the request, stating that Plaintiff was appropriately assigned.

Plaintiff worked in the kitchen for two months. His reassignment to the kitchen has caused him harm in that he "began to experience severe pain, cramping, numbness and loss or limited use of/in hands, wrists, elbows and knees." (D.E. 5, p. 4). Plaintiff further has difficulty in getting out of his top bunk assignment, sleeping, and performing daily tasks that require a high level of manual dexterity. Plaintiff was prescribed Ibuprofen for pain relief. Medical Officer Tupa told Plaintiff that he should talk to his

supervisor about his medical problems. Medical Officer Tupa also told Plaintiff that there was nothing wrong with him.

On May 22, 2016, Plaintiff submitted a Step 1 grievance (Grievance No. 2016146740), complaining about his inappropriate work assignment and seeking reassignment back to the Garden/Medical Squad. Senior Practice Manager Gloor reviewed the grievance, concluding that: (1) Plaintiff was seen for his medical complaints on May 21 and 24, 2016; (2) Plaintiff's PULHES (Physical capacity, Upper extremities, Lower extremities, Hearing, Eyes, Psychiatric) was updated; (3) the medical department has assigned all of the necessary restrictions; and (4) the assignment of jobs falls under the jurisdiction of classification. (D.E. 5-4).

Plaintiff's Step 2 grievance, dated July 7, 2016, was reviewed and rejected by Defendant John/Jane Doe.[2] (D.E. 5-5). Plaintiff states that Senior Practice Manager Gloor and Unit Investigator Baros refused to provide Plaintiff with the name of the individual who denied his Step 2 grievance.

On May 25, 2016, Plaintiff's job assignment was changed from kitchen to janitor at the direction of former Food Service Kitchen Captain Oliver and pursuant to the order of UCC Program Supervisor Maciel. Plaintiff referred to this position as "SSI," which he believes stands for "special service inmate." Plaintiff further believes this job reassignment to be medically inappropriate. He continued to experience medical problems, including issues associated with a hernia. Plaintiff seeks to hold Medical

---

[2] The July 7, 2016 Step 2 grievance reflects the following signature by the reviewing officer: "Step II Medical Grievance Program Office of Professional Standards TDCJ Health Services Division." (D.E. 5-5).

Officer Tupa and Senior Practice Manager Gloor responsible for abrogating responsibility as they were aware of Plaintiff's medical restrictions and disregarded them by failing to take action to prevent injury to Plaintiff. Plaintiff alleges Medical Officer Tupa repeatedly told Plaintiff that there was nothing wrong with him and provided him only with aspirin. She is still involved with Plaintiff's medical care.

As an SSI janitor, Plaintiff was assigned to work in offender living areas and was directly supervised by correctional officers assigned to the building on that day. Plaintiff alleges Officer Salles disregarded Plaintiff's safety by requiring him to fill, move, lift, and place ten-gallon water containers, weighing as much as 84 pounds, with no brace, belt, dolly, or cart. Plaintiff further complains he was forced to perform this strenuous labor on slippery floors and in extremely hot conditions. Officers Salles and Tijerina each forced Plaintiff to engage in physical labor after Plaintiff identified to them his medical work restrictions. Officer Salles often denied Plaintiff permission to take a shower despite letting all other SSI janitors shower.

Plaintiff's tasks as a janitor caused him to suffer severe pain and cramping in his hands, wrists, elbows, right shoulder, arms, back, and knees. Plaintiff further experienced abdominal pain. Plaintiff testified that Major Ruiz informed him that he would always be an SSI. On March 21, 2017, Plaintiff submitted an I-60 requesting a job change commensurate with his medical restrictions. Program Supervisor Maciel denied the request, stating that Plaintiff was appropriately assigned. Plaintiff submitted additional sick call requests, and only received more Ibuprofen. When Plaintiff questioned the choice of medical treatment, his diagnostic interviews were terminated.

On March 22, 2017, Plaintiff submitted a Step 1 grievance (Grievance No. 2017108972), requesting reasonable accommodations for his work restrictions in accordance with the ADA/RA. Assistant Warden Merida determined that no action was warranted, concluding that Plaintiff was appropriately assigned based on his work restrictions and that Plaintiff needed to contact medical for updated restrictions. (D.E. 5-7). Plaintiff complains that Unit Investigator Baros processed this grievance as a unit classification matter and not as an ADA/RA matter. Plaintiff's Step 2 grievance, dated April 5, 2017, was reviewed by Assistant Director Chapa. In rejecting this grievance, Assistant Director Chapa determined that Plaintiff: (1) had one additional restriction not to lift weights greater than 20 pounds; and (2) had demonstrated in his medical evaluation on March 17, 2017, he had full range of motion in his elbows and could open and close his hands without difficulty. (D.E. 5-8).

Due to Officer Salles's alleged continued mistreatment, Plaintiff filed a grievance on June 12, 2017 which had not been reviewed or returned as of July 9, 2017. As of the date of the *Spears* hearing, Plaintiff's job responsibility was officially listed as "janitor" or "SSI." As an SSI janitor, Plaintiff is required to sweep, dust, mop, bend, and move heavy water buckets, which places him in constant pain and violates his work restrictions. According to Plaintiff, Defendants' injurious actions caused his hernia condition, and his life remains adversely affected by pain, cramps, and difficulty in performing many basic life activities.

### III. LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

## IV. DISCUSSION

### A. Plaintiff's § 1983 Claims

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### (1) Eleventh amendment immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996);

*Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues each Defendant in his or her official capacity for monetary damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against the individual Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

### (2)  Deliberate Indifference to Health and Safety

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)). Prison officials are required to must provide humane conditions of

confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer*, 511 U.S. at 834. The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed." *Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

### *Defendants Beard, Maciel, Salles, and Tijerina*

Plaintiff alleges that he suffers from various health concerns since his incarceration, namely: (1) nerve damage caused by abscesses in two molars; (2) numbness to both his hands, elbows, and shoulders due to a condition diagnosed as repetitive trauma; (3) health issues with his feet, including ingrown toenails, which were caused by wearing steel toe footwear; and (4) severe abdominal problems due to a possible hernia condition, which has caused Plaintiff to suffer in pain. Plaintiff's allegations further indicate that, due to many of his health concerns, he was medically

restricted starting in 2012 from work requiring the repetitive use of his hands as well as requiring steel toe or safety boots.

According to Plaintiff, his medical restrictions remained in place when Warden Beard and UCC Program Supervisor Maciel decided in 2016 to reassign Plaintiff from the Garden/Medical Squad to kitchen detail, which is a job requiring the highly repetitive use of hands. Plaintiff alleges that, unlike his work on the Garden/Medical Squad, his job assignment in the kitchen caused him to experience severe pain, cramping, and numbness in his hands, wrists, elbows, and knees.

Plaintiff further alleges that two months later, on May 25, 2016, UCC Program Supervisor Maciel caused his job assignment to change from kitchen detail to an SSI position as janitor. Plaintiff testified that he subsequently was medically restricted from lifting weights greater than 20 pounds. According to Plaintiff, Officers Salles and Tijerina forced Plaintiff to engage in strenuous physical labor as an SSI janitor, such as lifting and moving 84-pound water containers, even after Plaintiff identified to them his medical work restrictions. Plaintiff's tasks as a janitor likewise caused him to suffer severe abdominal pain and cramping in his hands, wrists, elbows, right shoulder, arms, back, and knees.

Plaintiff's allegations suggest that Warden Beard and UCC Program Manager Maciel did not seriously consider Plaintiff's health issues and possible disabilities when assigning him to jobs that may be medically inappropriate. Plaintiff's allegations further indicate that Officers Salles and Tijerina knowingly disregarded his medical restrictions by requiring him to perform physically onerous tasks in his janitor position that were in

violation of his medical restrictions. Accepting Plaintiff's allegations as true, which is required at this stage of the proceedings, Plaintiff has alleged sufficient facts to state deliberate indifference claims against these four defendants. Accordingly, the undersigned recommends retaining Plaintiff's deliberate indifference claims against Defendants Beard, Maciel, Salles, and Tijerina in their individual capacities.

Plaintiff seeks injunctive relief in the form of a job reassignment back to the Garden/Medical Squad. For purposes of injunctive relief, it is unclear whether Warden Beard or UCC Program Supervisor Maciel would be the appropriate official to provide the requested injunctive relief. Therefore, the undersigned recommends retaining these claims against both defendants in their official capacities as well.

### Defendants Merida, Ruiz, Baros, Gloor, and Tupa

Plaintiff names several defendants who were either acting as supervisors or otherwise had limited involvement in the decisions to reassign Plaintiff to different jobs. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Id.* at 303-04. *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies

that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

In this case, Plaintiff's allegations indicate that Assistant Warden Merida, Major Ruiz, and Medical Officer Tupa had knowledge of or otherwise acquiesced to Plaintiff's job reassignment from the Garden/Medical Squad Two to kitchen detail. After Plaintiff was reassigned to the position of SSI janitor, Major Ruiz informed Plaintiff that he would always be an SSI. Plaintiff, however, alleges nothing to suggest that these three defendants had any personal involvement in the decisions to reassign Plaintiff to the more physically demanding kitchen and janitor positions. Plaintiff, therefore, has failed to allege a plausible deliberate indifference claim against Defendants Merida, Ruiz, and Tupa in their roles as supervisory officials.

Plaintiff makes the following allegations related to his attempts to grieve his job assignments either formally or informally: (1) Major Ruiz denied Plaintiff's I-60 request submitted on May 22, 2016 to be reassigned back to the Garden/Medical Squad; (2) Senior Manager Gloor denied Plaintiff's Step 1 grievance, dated May 22, 2016, in which Plaintiff complained about his inappropriate work assignment; (3) Defendant John/Jane Doe denied Plaintiff's Step 2 grievance, dated July 7, 2016; (4) Senior Practice Manager Gloor and Unit Investigator Baros refused to provide Plaintiff with the name of the individual who denied his Step 2 grievance; (5) Assistant Warden Merida denied Plaintiff's Step 1 grievance, dated March 22, 2017, in which Plaintiff requested

reasonable accommodations for his work restrictions in accordance with the ADA/RA; (6) Unit Investigator Baros improperly processed his March 22, 2017 grievance as a unit classification matter and not as an ADA/RA matter; and (7) Assistant Director Chapa denied Plaintiff's Step 2 grievance, dated April 5, 2017.

Plaintiff's allegations, at best, point to his dissatisfaction with the actions taken by Defendants Ruiz, Gloor, John/Jane Doe, Merida, and Chapa in investigating, classifying, or rejecting each of Plaintiff's formal and informal grievances. Such allegations, however, fail to state a cognizable constitutional claim. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances).

Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Ruiz, Gloor, John/Jane Doe, Baros, Merida, and Chapa be dismissed for failure to state a claim and/or as frivolous.

### (3)    Deliberate Indifference to Serious Medical Needs

To state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that the officials acted with deliberate indifference to serious medical needs.

*Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303.(1991);

*Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  Deliberate indifference requires

that prison officials be both aware of specific facts from which the inference could be

drawn that a serious medical need exists and then the prison official, perceiving the risk,

must deliberately fail to act.  *Farmer*, 511 U.S. at 837.  In the context of medical

treatment, the prisoner must show "that prison officials refused to treat him, ignored his

complaints, intentionally treated him incorrectly, or engaged in any similar conduct that

would clearly evince a wanton disregard for any serious medical needs."  *Gobert*, 463

F.3d at 346 (internal quotation marks and citation omitted).

However, "unsuccessful medical treatment and acts of negligence or medical

malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement

with [his] medical treatment, absent exceptional circumstances."  *Sama v. Hannigan*, 669

F.3d 585, 590 (5th Cir. 2012).  Negligent medical care does not constitute a valid § 1983

claim.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  As long as prison

medical personnel exercise professional medical judgment, their behavior will not violate

a prisoner's constitutional rights.  *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982).

Plaintiff alleges that: (1) as a result of working in kitchen detail and as a janitor, he

suffered severe abdominal pain cramping as well numbness and loss or limited use of or

in his hands, wrists, elbows and knees; (2) he repeatedly complained to Medical Officer

Tupa about his serious health issues that resulted from performing tasks that violated his

medical restrictions; (3) Officer Tupa responded by only prescribing aspirin or Ibuprofen

and informing Plaintiff there was nothing wrong with him.  Plaintiff testified at the

*Spears* hearing that Medical Officer Tupa was not involved either in diagnosing Plaintiff with a hernia condition or scheduling him to visit the hospital for evaluation in December of 2017. Taken as true, Plaintiff has stated a claim of deliberate indifference to his serious medical needs against Medical Officer Tupa. Therefore, the undersigned recommends retaining Plaintiff's deliberate indifference against Medical Officer Tupa in his individual capacity.

### B. ADA/RA Claims

Plaintiff claims that the failure of Defendants to provide him with a job assignment commensurate with his medical restrictions and within the scope of his disabilities amounts to a refusal to accommodate his disabilities in violation of the ADA and RA. While Plaintiff did not separately name the TDCJ as a defendant, it is the appropriate defendant for these claims. *See McCoy v. Tex. Dep't Crim. Justice*, No. C-05-370, 2006 WL 2331055 (S.D. Tex. Aug. 9, 2006). *See also Steele v. Thaler*, No. H-09-4076, 2011 WL 739524, at *2 (S.D. Tex. Feb. 22, 2011) (recognizing that plaintiffs cannot sue individual defendants under Title II of the ADA and RA).

The ADA and the RA provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 29 U.S.C. § 794(a). Under the ADA and RA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). That is, by failing to accommodate for the disability of the disabled

person, the defendant has effectivity discriminated against the person. *Tennessee v. Lane,* 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners. *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA).

Plaintiff's allegations in this case indicate that he has numerous medical conditions affecting his ability to use his shoulders, arms, hands, and feet. In addition, Plaintiff has testified that he suffers from severe abdominal pain, that he has been diagnosed with a possible hernia, and that he received a medical restriction not to lift more than twenty pounds. As discussed above, his allegations suggest that prison officials failed to take into account his health issues and possible disabilities when assigning him to jobs that may be medically inappropriate. Taken as true, Plaintiff has sufficiently stated an ADA/RA claim at this early stage in the proceedings. Accordingly, the undersigned recommends retaining Plaintiff's ADA/RA claim against the TDCJ.

### C.   Plaintiff's Motion for Preliminary Injunction

Plaintiff has filed a motion for a preliminary injunction, asking the Court to issue an order requiring: (1) the TDCJ not to transfer Plaintiff to another prison unit for a period lasting from June 22, 2017 until no less than five years from the final judgment and/or appeal of this action; and (2) Warden Beard to reassign Plaintiff from janitor to Garden/Medical Squad or the "closest medically appropriate facsimile." (D.E. 7, pp. 1-2). Plaintiff contends that he has met each element of the standard for preliminary injunctive relief. (D.E. 9, pp. 2-5).

In order to obtain a preliminary injunction under Federal Rule of Civil Procedure 65(a), the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013). Injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted). Plaintiff must carry the burden as to all four elements before a preliminary injunction may be considered. *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

As discussed above, the undersigned recommends retaining Plaintiff's deliberate indifference and ADA/RA claims. However, at this early stage in the proceedings, Plaintiff has failed to establish a substantial likelihood of success on the merits.

Defendants have yet to answer Plaintiff's claims, and no discovery in this case has taken place. Furthermore, Plaintiff has failed to convince the undersigned that he will suffer substantial injury if the preliminary injunction is denied. Plaintiff testified at the *Spears* hearing that he will be receiving medical treatment at the hospital this month to confirm his hernia condition and evaluate whether he has cancer. Plaintiff further indicated that, while his current position as a janitor has caused him to suffer a variety of health concerns, he has not required emergency medical treatment.

On the third and fourth factors, Plaintiff has failed to show that at this early stage of the litigation his interest in being reassigned to a less physically demanding job outweighs the interest of the prison in assigning appropriate jobs to its inmates. It would not serve the public's interest for the Court to grant Plaintiff preliminary injunctive relief at this time without a full opportunity for the facts to be developed beyond Plaintiff's allegations. *See Kahey v. Jones*, 836 F.2d 948, 951 (5th Cir. 1988) (federal courts defer to prison administrators concerning day-to-day operations in absence of a constitutional violation). Should Plaintiff be able to prove a constitutional violation to a trier of fact, permanent injunctive relief might then be appropriate at some point in the future.

Accordingly, it is respectfully recommended that Plaintiff's Motion for Preliminary Injunction (D.E. 7) be denied.

## V.     CONCLUSION

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, state the following claims: (1) deliberate indifference claims to his health and safety against: (a) **Warden R. Beard, Jr., Program Supervisor V. Maciel, Correctional Officer T.**

**Salles, and Correctional Officer V. Tijerina** in their individual capacities; and (b) **Warden R. Beard, Jr. and Program Supervisor V. Maciel** in their official capacities for injunctive relief; (2) a deliberate indifference claim to his serious medical needs against **Medical Officer C. Tupa;** and (3) an ADA/RA claim against the **TDCJ.** Accordingly, it is respectfully recommended that these claims be **RETAINED.** The undersigned will order service as to these defendants by separate order.

The undersigned further recommends that: (1) Plaintiff's claims for money damages against all Defendants in their official capacities be **DISMISSED** as barred by the Eleventh Amendment; (2) Plaintiff's claims against the remaining Defendants be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1); and (3) Plaintiff's Motion for Preliminary Injunction (D.E. 7) be **DENIED**.

Respectfully submitted this 18th day of December, 2017.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).